IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| JAMES ANTHONY BARNETT, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:15CV1064 |
| SHERIFF SAMUEL PAGE, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court upon Defendant Jennifer Thomas, RN's ("Nurse Thomas") Motion for Summary Judgment. (Docket Entry 35.) Plaintiff James Anthony Barnett, Jr. did not file a response. Also before the Court is Plaintiff's motion entitled, "Motion to Withdraw." (Docket Entry 39.) For the following reasons, the Court recommends that Defendant Thomas' Motion for Summary Judgment be granted and Plaintiff's Motion to Withdraw be denied.

## I. BACKGROUND

Plaintiff, a prisoner of the State of North Carolina, filed this action pursuant to 42 U.S.C. § 1983 on December 14, 2015. (Compl., Docket Entry 2.) Plaintiff alleges that on May 31, 2013, he was transported to the Rockingham County Detention Center ("Rockingham") from the Alamance County Detention Center. (*Id.* ¶ V.) Plaintiff states that he suffers from several mental disorders and upon arriving at Rockingham, he informed the booking officer and nurse of his mental impairments during his initial screening. (*Id.*)

1

Plaintiff did not have his medication with him, so he signed a release form so that Rockingham officials could review his medical records and prescribe him medication. (*Id.*)

Between June 2013 and December 2013, Plaintiff alleges that he constantly submitted mental health referrals asking to see and speak to a mental health professional. (*Id.*) Plaintiff was told that it was Nurse Thomas' decision whether or not to allow him to see a professional and that there was nothing the other nurses could do. (*Id.*) He states that Nurse Thomas "refuse[d] to see [him] and evaluate [his] mental health" and place him on a list to see a mental health professional. (*Id.*) During this time, Plaintiff also wrote Defendant Sheriff Samuel Page[1] "two letters of requests asking [Page] to step in and investigate to find out why [Plaintiff was] not being put on the list to see a mental health professional." (*Id.*) Plaintiff states that "[o]n December 7, 2013, he was hearing really strong voices and seeing things . . . which lead [him] to cut [his] neck (from the right side of [his neck] around towards [his] throat area) and fight the detention staff when they came to try and retrieve the razor blade from [him]." (*Id.*) Plaintiff was tazed, handcuffed, and rushed to the hospital. (*Id.*) Plaintiff was subsequently placed on suicide watch. (*Id.*)

In his prayer for relief, Plaintiff asks for compensatory damages and requests that the Court award injunctive relief by: (1) ordering Rockingham officials "to stop ignoring, denying and delaying inmates medical and mental health treatment;" (2) ordering inmate medical and mental health issues "to be dealt with promptly;" (3) requiring "better decisions and judgments be made at [Rockingham] by staff and medical staff, based on mere common sense and

---

[1] Defendant Page has been dismissed from this action. (*See* Docket Entry 23.)

knowledge and based on medical training and expertise, regardless of what that person(s) [or] colleague(s) may say or think;" (4) permanently suspending Nurse Thomas and ordering Defendant Sheriff Page to step down; and (5) ordering Defendants to pay Plaintiff's court and attorney fees if Defendants "are found liable and in the wrong." (*Id.* ¶ VI.)

Nurse Thomas has submitted an affidavit and Plaintiff's complete medical file from his incarceration at Rockingham between May 2013 and December 2013. (*See* Thomas Aff., Docket Entry 37; Barnett Medical Records, Docket Entry 37-1.) According to her affidavit, Nurse Thomas is a registered nurse licensed in North Carolina. (Thomas Aff. ¶ 2.) At all relevant times, she was employed by Southern Health Partners to provide medical care to inmates at Rockingham and served as the medical team administrator. (*Id.* ¶ 3.) Nurse Thomas is not authorized to prescribe medication. (*Id.* ¶ 7.) Rather, medications for inmates at Rockingham would be prescribed by Manuel Maldonado, a physician's assistant who came to Rockingham generally once per week. (*Id.* ¶¶ 6-7.)

Under the contract between Southern Health Partners and Rockingham, Southern Health Partners and its representatives did not provide mental health services to inmates. (*Id.* ¶ 4.) Instead, mental health services were provided by Daymark Mobile Crisis ("Daymark") and Sharon Neville ("Neville") served as a liaison between Rockingham medical providers and Daymark. (*Id.*) If an inmate requested mental health services or if mental health services were needed, Rockingham's medical staff would provide records or other information to Neville. (*Id.*) Neville would then determine whether mental health services would be provided by Daymark. (*Id.*) Nurse Thomas had no control over whether Daymark would

3

provide mental health services to an inmate. (*Id.* ¶ 39.) Thus, in the context of mental health services, Nurse Thomas' responsibilities were limited to ensuring that Neville received an inmate's request for mental health services. (*Id.* ¶¶ 4, 39.)

Plaintiff was booked into the Jail on May 31, 2013. (*Id.* ¶ 8; *see also* Barnett Medical Records at 1.) During his initial medical assessment on or about June 1, 2013, Plaintiff reported taking several medications and reported a history of being bipolar, and having schizophrenia and depression. (Thomas Aff. ¶ 9; Barnett Medical Records at 4-5.) Plaintiff denied that he had recently considered committing suicide. (Barnett Medical Records at 6.)

Plaintiff executed an Authorization for Release of Medical Information to Correctional Facilities, authorizing Rockingham medical providers to obtain his medical records from Alamance County, where Plaintiff was incarcerated prior to being transferred to Rockingham. (Thomas Aff. ¶ 11; Barnett Medical Records at 14.) Alamance County Mental Health reported that it had no medical records for Plaintiff. (Barnett Medical Records at 14.) Additionally, Nurse Thomas personally spoke to a provider at the Alamance County Jail, who informed her that Plaintiff was not taking any mental health medications during his incarcerations at the Alamance County Jail. (Thomas Aff. ¶ 11; Barnett Medical Records at 57.) Because the providers were unable to obtain verification of Plaintiff's prescriptions and because Maldonado never ordered any mental health drugs, no mental health medications were administered to Plaintiff. (Thomas Aff. ¶ 12.) Absent an order from Maldonado, Nurse Thomas was unable to administer prescription medications. (*Id.*) During his incarceration, Plaintiff submitted several Sick Call Slips requesting to be seen by a mental

4

health provider. (Thomas Aff. ¶¶ 13, 15, 38, 40-41, 45; Barnett Medical Records at 22-26, 29.) Nurse Thomas left each of these Sick Call Slips for Sharon Neville, so that Neville could make a determination as to whether an evaluation by a Daymark provider was warranted. (Thomas Aff. ¶ 51.)

On June 25, 2013, Plaintiff reported to the nursing staff that he had not eaten since June 2, 2013. (*Id.* ¶ 17.) Several Suicide Assessment forms were completed in response to Plaintiff's refusal to eat. (*Id.* ¶ 16; Barnett Medical Records at 37-52.) He began eating again on July 2, apparently stopped eating again, and then resumed eating around July 10, 2013. (Thomas Aff. ¶¶ 21, 22, 30; Barnett Medical Records at 58-60.) During Plaintiff's reported hunger strike, his weight was regularly checked, he was regularly encouraged to eat and drink, and his mucous membranes were checked to determine if he was dehydrated. (Thomas Aff. ¶¶ 17, 19, 20, 24-27, 33-35; Barnett Medical Records at 57-60, 62.)

Maldonado examined Plaintiff on July 2, 2013. (Thomas Aff. ¶ 21; Barnett Medical Records at 58.) Maldonado performed a physical examination, ordered a mental health referral, urged Plaintiff to start eating, and ordered daily weight checks. (Barnett Medical Records at 58.) Following Maldonado's examination, Plaintiff was seen by providers with Daymark on three occasions: July 2, 2013, July 8, 2013, and July 15, 2013. (Thomas Aff. ¶¶ 23, 28, 32; Barnett Medical Records at 17-19.) At the conclusion of the third evaluation, the provider for Daymark, Lisa Marshall, recommended that Plaintiff be removed from suicide watch. (Thomas Aff. ¶ 32; Barnett Medical Records at 19.) In response, Plaintiff was removed from suicide watch on July 16, 2013. (Thomas Aff. ¶ 34; Barnett Medical Records

5

at 62.)

After Plaintiff was released from suicide watch and began eating, he never reported to Nurse Thomas or any of the other providers at Rockingham that he felt suicidal or felt the urge to harm himself. (Thomas Aff. ¶ 52.) Nurse Thomas states that, at all times, she attempted to treat Plaintiff in accordance with her best medical judgment and pursuant to accepted standards of practice for registered nurses. (*Id.* ¶ 53.) She was never deliberately indifferent to Plaintiff's medical needs. *Id.*

## II. DISCUSSION

1. Defendant Thomas' Motion for Summary Judgment

Because Plaintiff "fail[ed] to file a response [to Defendants' motion for summary judgment] within the time required by [this Court's Local Rules], the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice.[2] M.D.N.C. L. R. 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession).[3] Alternatively, as explained below, the Court should

---

[2] A notice sent pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) advises a *pro se* plaintiff of his right to file a response to a dispositive motion filed by a defendant. (*See* Docket Entry 38.) Moreover, Plaintiff was given additional time to file an opposition brief, but failed to do so. (*See* Text Order dated 2/2/18.)

[3] Plaintiff's status as a *pro se* litigant does not excuse his inaction. "As the United States Supreme Court observed in *McNeil v. United States*, 508 U.S. 106, 113 (1993), '[the Supreme Court] ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.' Accordingly, *pro se* litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." *Dewitt v. Hutchins*, 309 F. Supp. 2d 743, 748-49 (M.D.N.C. 2004) (internal parallel citations and second set of internal

grant Defendant Thomas' motion for summary judgment on the merits.

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-

---

quotation marks omitted) (emphasis added).

serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson*, 477 U.S. at 248-49.

In the instant matter, Plaintiff was a pre-trial detainee during the relevant time period.[4] Thus, "the standard of care is governed by the due process clause of the fourteenth amendment rather than the eighth amendment's prohibition against cruel and unusual punishment." *Hill v. Nicodemus*, 979 F.2d 987, 990-91 (4th Cir. 1992) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). "The due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). As such, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

"Historically, the United States Court of Appeals for the Fourth Circuit has applied the same analysis to Section 1983 deliberate indifference claims under the Fourteenth Amendment as under the Eighth Amendment." *Durand v. Charles*, No. 1:16CV86, 2018 WL 748723, at *11 (M.D.N.C. Feb. 7, 2018) (citation omitted) (unpublished). "The plaintiff must demonstrate

---

[4] *See* https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0591420&searchLastName=BARNETT&searchFirstName=JAMES&searchMiddleName=A&listurl=pagelistoffendersearchresults&listpage=1 (search for "James A. Barnett" last completed March 28, 2018).

8

that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) *(citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).[5] A medical need is serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted). "An officer is deliberately indifferent only when he 'knows of and disregards' the risk posed by the serious medical needs of the inmate." *Id.* (citation omitted).

The Fourth Circuit also recognizes that "[d]eliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Similarly, "[d]isagreements between an inmate and a physician over the inmates proper medical care does not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citation omitted). The Court may consider "[m]edical records of sick calls, examinations, diagnoses, and medications [to] rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Here, the undisputed evidence establishes that Nurse Thomas did not act with deliberate indifference to a serious medical condition suffered by Plaintiff. To the contrary, the undisputed evidence establishes that Plaintiff received extensive medical treatment

---

[5] The Supreme Court recently held in *Kingsley v. Hendrickson* that "the appropriate standard for [assessing] a pretrial detainee's excessive force claim is solely an objective one." 135 S. Ct. 2466, 2473 (2015). The Fourth Circuit has not considered whether this standard applies in the medical care context. Here, the Court need not resolve this issue as "consideration of the subjective prong does not alter the outcome" in this matter. *Durand*, 2018 WL 748723, at *11.

9

throughout his 2013 incarceration at Rockingham, and was seen regularly by medical staff. In particular, his requests for mental health services were referred by Nurse Thomas to Neville, for a determination as to whether intervention by Daymark was necessary. Ultimately, Plaintiff was seen on three occasions at Daymark and their providers subsequently recommended that Plaintiff be removed from suicide watch.

As to Plaintiff's claim regarding his medications, Nurse Thomas attempted to verify any prescriptions he had at the time, but discovered that Plaintiff was not taking any mental health medications at his previous place of incarceration. As a registered nurse, Nurse Thomas is not authorized to prescribe medications and may only administer medications to an inmate after it has been ordered by the physician's assistant. During Plaintiff's 2013 incarceration, Maldonado did not order any mental health medications, and accordingly, Nurse Thomas was unable to administer those medications. Thus, the absence of the administration of mental health medications to Plaintiff did not result from any deliberate indifference by Nurse Thomas. In sum, the evidence demonstrates that Nurse Thomas was not deliberately indifferent to Plaintiff's serious medical need, thus summary judgment should be granted in her favor.

Nurse Thomas also argues that she is entitled to qualified immunity. (Docket Entry 36 at 11.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also*

*Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: (1) whether the official violated a constitutional right; and if so, (2) whether the right was "clearly established" at the time of its violation. *See, e.g., Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009).[6] Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

Having found that Plaintiff has not stated a claim for a constitutional violation, this court finds that Nurse Thomas is entitled to qualified immunity. *See Abney v. Coe*, 493 F. 3d 412, 415 (4th Cir. 2007) ("If [an officer] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there."); *Ervin v. Mangum*, 127 F.3d 1099, 1997 WL 664606, at *5 (4th Cir. 1997) (unpublished table decision) (citation omitted) ("Because the evidence in support of [Plaintiff's] claim for failure to protect cannot constitute the violation of a constitutional right, the defendants are entitled to qualified immunity on that claim.").

---

[6] In *Pearson*, the Supreme Court overruled the mandatory two-step sequence adopted in *Saucier v. Katz*, 533 U.S. 194 (2001) in analyzing qualified immunity. Thus, after *Pearson*, courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances . . . ." *Pearson*, 555 U.S. at 236.

To the extent Plaintiff also asserts a claim for medical malpractice against Nurse Thomas, this claim should also be dismissed. Under North Carolina law, to recover on a medical malpractice claim, a plaintiff must prove three elements: "(1) the applicable standard of care; (2) defendant's breach of that standard; and (3) defendant's breach caused plaintiff's injury." *Warden v. United States*, 861 F. Supp. 400, 402 (E.D.N.C. 1993), *aff'd*, 25 F.3d 1042 (4th Cir. 1994).[7] Additionally, "[a]s a general rule, plaintiff must present expert testimony to make out a prima facie showing for each of these three elements." *Id.* Here, Plaintiff failed to produce any evidence in response to Nurse Thomas' motion and has not identified any experts as to this claim. Accordingly, Nurse Thomas is entitled to summary judgment on this claim. *See Sprecher v. Kerr*, No. 2:98-CV-32-BO(2), 1999 WL 1940024, at *3 (E.D.N.C. Jan. 13, 1999) (unpublished) (dismissing medical malpractice claim where "Plaintiff has failed to produce any affidavits or other reports by appropriate medical experts in response to the magistrate judge's scheduling order or to Defendant's motion.").

2. Plaintiff's Motion to Withdraw

Plaintiff has filed a motion seeking to have the undersigned removed or withdrawn from this action. (Docket Entry 39.) Plaintiff argues that he has been treated unfairly and that all of the rulings are "in favor of the defendants no matter what type of motions the defendants file." (*Id.* at 2.) Plaintiff further states that the undersigned delays in ruling upon his motions, but quickly grants motions filed by the defendants. (*Id.*) "[D]istrict courts have

---

[7] North Carolina has recognized an exception by applying the doctrine of *res ipsa loquitur*. *Warden*, 861 F. Supp. at 403. This exception is not applicable here.

12

the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, — U.S. —, 136 S. Ct. 1885, 1892, 195 L. Ed. 2d 161 (2016). A review of the docket indicates that there has been no abuse of the Court's inherent authority in this matter, neither has Plaintiff been prejudiced by any rulings. As such, Plaintiff's motion to withdraw should be denied.

### III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendant Thomas' Motion for Summary Judgment (Docket Entry 35) be **GRANTED,** Plaintiff's Motion to Withdraw (Docket Entry 39) be **DENIED**, and this action be dismissed.

*[signature]*
Joe L. Webster
United States Magistrate Judge

April 2, 2018
Durham, North Carolina